(Nos. 83418, 83486 cons.—

*In re* BARBARA H. (The People of the State of Illinois *et al.*, Appellants, v. Barbara H., Appellee).

*Opinion filed October 22, 1998.*

484

David R. Akemann, State's Attorney, of St. Charles, and Norbert J. Goetten, John X. Breslin, Diana L. Campbell and Martin P. Moltz, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, for the People.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Sally A. Swiss, Assistant Attorney General, of Chicago, of counsel), for intervenor-appellant Illinois Department of Mental Health & Developmental Disabilities.

William E. Coffin, of the Illinois Guardianship & Advocacy Commission, of Chicago, for appellee.

Susan Stefan, of Coral Gables, Florida, for *amici curiae* Professor Donald Bersoff *et al.*

JUSTICE HARRISON delivered the opinion of the court:

Following a hearing under chapter 3, article VIII, of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3—800 *et seq.* (West 1996)), the circuit court of Kane County entered separate judgments committing Barbara H. to the Elgin Mental

Health Center involuntarily and authorizing the staff of the center to administer psychotropic medication to her against her will. The appellate court consolidated the cases for review and reversed and remanded for a new hearing based on the public defender's waiver of Barbara H.'s right to be present at the hearing. Although section 3—806 of the Mental Health Code (405 ILCS 5/3—806 (West 1996)) authorizes an attorney to waive his client's right to be present provided certain conditions are met, the appellate court declared the statute unconstitutional on its face on the grounds that it fails to meet minimum due process requirements. 288 Ill. App. 3d 360.

The State and the Department of Mental Health and Developmental Disabilities petitioned this court for leave to appeal as of right under Rule 317 (134 Ill. 2d R. 317) because the question of the statute's constitutionality arose for the first time in and as a result of action by the appellate court. We granted those petitions. We also allowed a group of law professors specializing in mental health law to file a brief as *amici curiae*. For the reasons that follow, we hold that the appellate court was correct in reversing the circuit court's judgments. Unlike the appellate court, however, we do not believe it necessary or appropriate to address the constitutionality of the statute. The circuit court's judgments are infirm because the requirements of the Mental Health Code were not satisfied. Those judgments are reversed outright, and these proceedings are terminated. If the State believes that Barbara H. remains in need of involuntary commitment and should be given psychotropic medication against her will, it must initiate new proceedings in the circuit court.

The controversy before us began two years ago, in 1996, when Barbara H. was alleged to be mentally ill and unable to care for her basic physical needs. On July 17 of that year, a social worker from the Northwest Community Hospital filed a petition under section 3—600 *et*

*seq.* of the Mental Health Code (405 ILCS 5/3—600 *et seq.* (West 1996)) to have Barbara H. involuntarily admitted to the Elgin Mental Health Center. The petition was accompanied by two certificates indicating that Barbara H. was subject to involuntary admission and in need of immediate hospitalization (see 405 ILCS 5/3—611 (West 1996)). The first certificate was executed by a doctor from Northwest Community Hospital. The second was issued by a doctor from the Elgin Mental Health Center.

On the same day the petition for involuntary admission was filed, the doctor from the Elgin Mental Health Center who issued the second certificate petitioned the circuit court under section 2—107.1 of the Mental Health Code (405 ILCS 5/2—107.1 (West 1996)) for an order authorizing his facility's clinical staff to administer psychotropic medication to Barbara H. involuntarily.

A hearing on the psychotropic medication petition was set for July 26, 1996. A hearing on the petition for involuntary admission was initially scheduled for July 19, 1996. Both matters were subsequently continued, and a joint hearing on the two petitions was eventually conducted on August 2, 1996. Barbara H. was not present. Her appearance was waived by a public defender who was appointed to the case pursuant to a general administrative order entered by the circuit court. Based on this waiver, which was invoked under section 3—806 of the Mental Health Code (405 ILCS 5/3—806 (West 1996)), the circuit court allowed the proceeding to go forward without Barbara H. At the conclusion of that hearing, the circuit court held that Barbara H. was subject to involuntary admission to the Elgin Mental Health Center for a period not to exceed 90 days. The court further held that Elgin's staff could administer psychotropic medication to Barbara H. against her will for the same 90-day period.

On appeal, Barbara H. asserted that the State had

failed to adduce clear and convincing evidence showing the presence of the statutory factors necessary for involuntary administration of psychotropic medication under section 2—107.1 of the Mental Health Code (405 ILCS 5/2—107.1 (West 1996)). She also contended that procedural requirements of that statute were not satisfied. Her primary argument, however, was that section 3—806 of the Mental Health Code (405 ILCS 5/3—806 (West 1996)), which allowed the public defender to waive her presence at the August 2 hearing, was unconstitutional. According to Barbara H., the constitutional infirmity rendered both of the circuit court's judgments invalid, and those judgments should be reversed.

The appellate court did not address Barbara H.'s evidentiary or procedural challenges. It focused exclusively on her constitutional arguments regarding section 3—806. That statute provides:

"(a) The respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm.

(b) The court shall make reasonable accommodation of any request by the recipient's attorney concerning the location of the hearing. If the recipient's attorney advises the court that the recipient refuses to attend, the hearing may proceed in his or her absence.

(c) No inference may be drawn from the recipient's nonattendance pursuant to either subsection (a) or (b) of this Section." 405 ILCS 5/3—806 (West 1996).

Agreeing with Barbara H.'s position, the appellate court held that she possesses a significant liberty interest in being free from unjustified civil commitment and in being protected from the involuntary administration of psychotropic drugs. This liberty interest is entitled to protection under the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). Citing authority from the United

States Supreme Court, the appellate court opined that the due process clause conferred on Barbara H. the right to attend the August 2 hearing unless she made a voluntary, intelligent and knowing waiver of that right or unless her conduct was so disruptive as to require her exclusion.

In the appellate court's view, section 3—806(a) of the Mental Health Code (405 ILCS 5/3—806(a) (West 1996)) does not adequately protect the due process rights of individuals in Barbara H.'s position because it would allow an attorney to waive his client's presence without requiring a finding by the court that the client is unable to make a rational choice herself about whether to attend or not. It is also infirm, according to the appellate court, because it does not require input from a health care professional as to (1) the client's ability to make a choice about attending and (2) whether her presence would cause harm. The result of these deficiencies, according to the appellate court, is that the attorney could exclude the client from the hearing even though the client wished to be present and her presence posed no risk to her well-being. The appellate court concluded that

"[t]his outcome is undoubtedly unconstitutional as it flies in the face of the clearly enunciated fundamental right that an individual has to be present at his civil commitment hearing. See *Specht v. Patterson*, 386 U.S. 605, 610, 18 L. Ed. 2d 326, 330, 87 S. Ct. 1209, 1212 (1967)." 288 Ill. App. 3d at 372.

The appellate court likewise declared invalid section 3—806(b) of the Mental Health Code (405 ILCS 5/3—806(b) (West 1996)), which requires the circuit court to make reasonable accommodation of an attorney's request regarding location of the hearing and provides that if the attorney advises the court that his client refuses to attend, the hearing may proceed in the client's absence. The appellate court found this provision to be fatally defective because it would allow a hearing to go forward

in the client's absence without requiring a determination that the client's refusal to attend was made knowingly or intelligently after the client was made aware of her right to be present. The representation of the attorney is sufficient. For the same reasons it gave in condemning section 3—806(a), the appellate court concluded that this was not sufficient to adequately protect the client's liberty interest. It therefore declared section 3—806(b) to be unconstitutional as well.

Because the appellate court believed section 3—806 to be invalid, and because section 3—806 provided the basis for the circuit court's decision to allow the August 2 hearing to proceed in Barbara H.'s absence, the appellate court reversed the circuit court's judgments and remanded for a new hearing. As noted at the outset of this disposition, we then granted petitions by the State and the Department of Mental Health and Developmental Disabilities for leave to appeal as a matter of right under Rule 317 (134 Ill. 2d R. 317).

In undertaking our review, we begin by noting that the case is moot. The underlying judgments, entered by the circuit court in 1996, were limited in duration to a period of 90 days. That period has long since passed. At this point, Barbara H. could be held involuntarily and forced to take psychotropic medication against her will only if a new set of petitions were filed and new hearings were conducted. 405 ILCS 5/2—107.1(a)(5) (West 1996); 405 ILCS 5/3—813 (West 1996). The original judgments no longer have any force or effect. As a result, our view as to the lawfulness of those judgments will not affect the outcome of the particular controversy before us today. Valid or not, those judgments can no longer serve as the basis for adverse action against Barbara H.

Where, as here, a decision on the merits cannot result in appropriate relief to the prevailing party, such a decision is essentially an advisory opinion. *Berlin v. Sarah*

*Bush Lincoln Health Center*, 179 Ill. 2d 1, 8 (1997). As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990).

The appellate court has recognized an exception to this rule for mental health cases. See, *e.g.*, *In re Slaughter*, 253 Ill. App. 3d 718, 721-22 (1993); *In re Garcia*, 59 Ill. App. 3d 500, 503 (1978). Whether our court should embrace that exception has not been briefed or argued by the parties to this case, and we shall leave the matter for another day. For present purposes, we think it sufficient to say that this case falls within another exception to the mootness doctrine whose validity is well established.

The courts in Illinois have held that where a case involves an event of short duration which is "capable of repetition, yet evading review," it may qualify for review even if it would otherwise be moot. *In re A Minor*, 127 Ill. 2d 247, 258 (1989). To receive the benefit of this exception, the complaining party must demonstrate that: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. *In re A Minor*, 127 Ill. 2d at 258.

The present case meets both of these criteria. By statute, the right to admit a person to a mental health facility involuntarily and to administer psychotropic medication to him against his will is subject to narrow time constraints. Psychotropic medication cannot be administered involuntarily for more than 90 days without additional hearings. 405 ILCS 5/2—107.1(a)(5) (West 1996). For involuntary hospitalizations, the maximum term is 180 days. Beyond that, a new petition must be filed, a

new hearing must be held, and a new order must be entered by the court. 405 ILCS 5/3—813 (West 1996). These periods are far too brief to permit appellate review. In virtually every case, the challenged commitment and medication orders will expire before appellate review can be completed, as happened here. To apply the mootness doctrine under these circumstances would mean that recipients of involuntary mental health services would be left without any legal recourse for challenging the circuit court's orders. The right to appeal conferred on such recipients by section 3—816 of the Mental Health Code (405 ILCS 5/3—816 (West 1996)) would be rendered a nullity.

The second requirement for the exception to the mootness doctrine is also present. Although Barbara H.'s current status is unknown, the record shows that she has a history of mental illness and hospitalization, including involuntary hospitalization. Given this, we believe it reasonable to expect that the same action taken against her in this case may confront her again. We shall therefore address this appeal on the merits.

As noted earlier, the appellate court based its decision on a determination that section 3—806 of the Mental Health Code (405 ILCS 5/3—806 (West 1996)) is unconstitutional. The State and the Department of Mental Health and Developmental Disabilities both contend that this was improper. They assert that the matter can be decided on nonconstitutional grounds and that the constitutional issue should not have been reached. We agree with this approach. A court should avoid declaring legislation unconstitutional if the case does not require it. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 408 (1997). If the case may be decided on other grounds, the constitutionality of a statute should not be addressed. *In re S.G.*, 175 Ill. 2d 471, 479 (1997).

In the matter before us, the appellate court found section 3—806 of the Mental Health Code to be constitutionally infirm because it permits involuntary commitment and medication hearings to proceed without the recipient's presence based on action taken by the recipient's attorney. The appellate court need not have reached this question, however, for there is another, more basic impediment to application of the statute. Section 3—806 presumes that the attorney acting on behalf of the recipient has authority to do so. In the matter before us, there was no showing that the public defender who purported to appear on Barbara H.'s behalf had such authority.

Conduct of the hearing was governed by article VIII of chapter 3 of the Mental Health Code (405 ILCS 5/3—800 *et seq.* (West 1996)), which includes section 3—805 (405 ILCS 5/3—805 (West 1996)). That statute provides:

"Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel. ***

1. If the court determines that the respondent is unable to obtain counsel, the court shall appoint as counsel an attorney employed by or under contract with the Guardianship and Mental Health Advocacy Commission, if available.

2. If an attorney from the Guardianship and Mental Health Advocacy Commission is not available, the court shall appoint as counsel the public defender or, only if no public defender is available, an attorney licensed to practice law in this State." 405 ILCS 5/3—805 (West 1996).

Although the statute refers to involuntary admissions, it is equally applicable to proceedings with respect to the involuntary administration of psychotropic medication.

405 ILCS 5/2—107.1 (West 1996). Accordingly, the right to counsel, as defined by section 3—805, attached not only to the petition to have Barbara H. involuntarily admitted, but also to the petition to administer psychotropic medication to her against her will.

The record before us shows that the public defender who appeared at the August 2, 1996, hearing and purported to represent Barbara H. was not appointed in accordance with section 3—805. Under the terms of that statute, appointment of the public defender is proper only if the respondent is indigent or otherwise unable to obtain counsel and an attorney from the Guardianship and Mental Health Advocacy Commission is not available. No determination as to those conditions was made. Instead, the public defender simply appeared pursuant to a standing administrative order entered by the chief judge of the circuit. Under that order, designated as General Order 90—1, the public defender was deemed to have been appointed automatically upon the filing of the petition for involuntary admission.

The public defender's appearance was problematic here because Barbara H. did not want him to represent her and claimed to be represented by someone else. This was made clear to the court at the outset of the August 2 hearing. After noting that Barbara H. was not present, the court queried the public defender as to whether he was waiving her presence pursuant to section 3—806. The public defender responded by advising the court that his authority to represent Barbara H. was in doubt. According to the public defender,

> "[H.] argues that we don't—the public defender's office does not represent her. She claims she has representation through the Catholic Charities Association, something similar. She also indicated to both the investigator and to Miss Waller[, a law student assistant, that] she refuses to come to court today."

The circuit court made no further inquiry into the mat-

ter. It simply dismissed the public defender's concern by referring to the standing administrative order appointing the public defender's office. The court then continued to press the question of whether Barbara H.'s presence was being waived. The public defender responded by stating that "as her attorney I would waive her presence." The court accepted that statement as constituting a valid waiver under the statute.

We believe this was improper. Section 3—805 confers on persons in Barbara H.'s position the right to counsel. It does not bestow on the court the power to force such individuals to accept representation from the public defender's office where, as here, there has been no showing that the individual is unable to afford her own attorney and the record indicates that the individual has refused the public defender's assistance.

Pursuant to section 3—805, citizens of Illinois who are subject to involuntary commitment and administration of psychotropic medication against their will are entitled to be represented by counsel of their choice, when they are capable of obtaining it. They are even entitled to represent themselves, if they are capable of making an informed waiver of their right to counsel. In proceeding as it did here, the circuit court unilaterally invalidated those rights.

When the August 2 hearing commenced and the dispute as to representation arose, the court had no basis for believing that Barbara H. could not make informed decisions about who should represent her. Under Illinois law, she was presumed competent. *In re Phyllis P.*, 182 Ill. 2d 400 (1998). When presented with information that Barbara H. had secured alternative representation and rejected representation by the public defender, the court should not have ignored the matter. Instead, it should have delayed action on the commitment and medication issues pending a determination as to the status of her

legal representation and her capacity to decide who should represent her. If evidence showed that Barbara H. was incapable of arranging for counsel or making an informed choice as to who should represent her, the circuit court would have been completely justified in appointing counsel for her under section 3—805. As we have indicated, however, the court made no attempt to take evidence or hear argument on those questions.

The result was that Barbara H. was stripped of the opportunity to be present at the hearing through the actions of an attorney she did not know and did not want to represent her. In effect, the circuit court allowed Barbara H.'s rights to be surrendered by a stranger. Her statutory right to counsel under section 3—805 was reduced to no more than an empty formality. This is not an error we can overlook. Involuntary mental health services entail a "massive curtailment of liberty" (*Vitek v. Jones*, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980)), and the right to counsel is a central feature of the procedures enacted by our legislature to ensure that Illinois citizens are not subjected to such services improperly.

The August 2 hearing was fatally defective for other reasons as well. As indicated above, the circuit court found that Barbara H. had waived her right to be present based solely on the public defender's statements. Wholly aside from the question of whether the public defender had authority to make those statements, they were not sufficient, standing alone, to excuse Barbara H.'s attendance. Under the clear and unambiguous terms of section 3—806(a), the court should also have required a clear showing that Barbara H.'s attendance would subject her to a substantial risk of serious physical or emotional harm. It did not. This additional requirement was completely overlooked.

Had the court followed the statute, the requisite

showing could not have been made. From the record it is apparent that the public defender had no knowledge whatsoever as to Barbara H.'s present ability to attend the hearing, which was apparently conducted on the grounds of the same mental health facility where Barbara H. was being held pending the hearing. Believing that she was represented by different counsel, Barbara H. was unwilling to cooperate with the public defender. When he tried to meet with her the morning of the hearing, she apparently just screamed at him.

The State likewise had no information regarding whether Barbara H.'s attendance would pose a risk, substantial or otherwise, of serious physical or emotional harm to her. Indeed, the State had no direct evidence of any facet of Barbara H.'s condition. Its entire case was predicated on the testimony of a physician who had not personally examined her. Although the doctor had treated Barbara H. in the past, he admitted on direct examination that he had not had an opportunity to perform a psychiatric examination on her in connection with this case and her present situation.

Section 3—807 of the Mental Health Code expressly provides:

"No respondent may be found subject to involuntary admission unless at least one psychiatrist, clinical social worker, or clinical psychologist who has examined him testifies in person at the hearing. The respondent may waive the requirement of the testimony subject to the approval of the court." 405 ILCS 5/3—807 (West 1996).

Because the sole witness to testify for the State had not examined Barbara H., this statute was not satisfied. In addition, the requirement of the testimony was not waived.

Finally, we note that the question of whether Barbara H. should be admitted to the mental health facility should not have been heard at the same time as the court considered whether she should be given psychotropic

medication against her will. The joint hearing was in direct violation of section 2—107.1(a)(2) of the Mental Health Code (405 ILCS 5/2—107.1(a)(2) (West 1996)). That statute expressly provides that a hearing on administration of psychotropic medication "shall be separate from a judicial proceeding held to determine whether a person is subject to involuntary admission." 405 ILCS 5/2—107.1(a)(2) (West 1996).

Because involuntary administration of mental health services implicates fundamental liberty interests (*Cooper v. Oklahoma*, 517 U.S. 348, 368-69, 134 L. Ed. 2d 498, 515, 116 S. Ct. 1373, 1384 (1996)), statutes governing the applicable procedures should be construed narrowly (*Radazewski v. Cawley*, 159 Ill. 2d 372, 378 (1994)). Here, those statutes were all but ignored. The appellate court was therefore correct to reverse the circuit court's judgments. Contrary to the appellate court, however, we do not believe that a remand is in order. These proceedings are concluded. As noted at the outset of this disposition, if the State believes that Barbara H. remains in need of involuntary commitment and should be given psychotropic medication against her will, it must initiate new proceedings in the circuit court.

For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part. The circuit court's judgments are reversed.

> *Appellate court judgment affirmed in part*
> *and reversed in part;*
> *circuit court judgments reversed.*