NOTICE

Decision filed 11/18/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0616

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* DAVID S., a Person Asserted to Be Subject to Involuntary Administration of Psychotropic Medication | ) ) ) | Appeal from the Circuit Court of Madison County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07-MH-157 |
| | ) | |
| David S., | ) | Honorable |
| | ) | Nelson Metz, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

David S. appeals from the trial court's September 11, 2007, judgment concluding that he was subject to the involuntary administration of psychotropic medication and subject to testing necessary to determine the safe and effective administration of those psychotropic medications. We reverse.

The mental health of David S., a Clinton County resident, deteriorated in March 2006 when he was found guilty of violating an order of protection. Certain symptoms had been evident for the previous 18 years, according to information provided by his wife. At some time before March 2006, David S.'s wife obtained an order of protection. David S. violated this order. Between March 2006 and August 23, 2007, the date of the petition for the involuntary administration of psychotropic medication, David S. was arrested two other times for violating that order of protection. David S. and his wife have children together. Because of these mental issues, David S. was only able to see his children if in the company and

1

supervision of his sister or brother-in-law. However, at some point the mental problems were severe enough that his sister refused to bring the children to see him. His mental status interfered with his ability to work in his customary job as a painter.

David S. was convinced that the mafia was active in Clinton County and had "run the Bible from the county." He was also convinced that his wife's girlfriend, an Illinois state trooper, was a mafia member and/or the daughter of a mafia boss, as well as a satanist. David S. claimed to have heard angels telling him that they would save him from these demonic and satanic practices. David S. was also convinced that the Clinton County sheriff's department worked directly for the mafia organization.

David S. was admitted to the Alton Mental Health Center on a transfer from Clinton County on June 11, 2007, having been found unfit to stand trial on charges seeking to revoke his probation. As far as his records revealed, this was his first psychiatric admission. David S. had two psychiatric diagnoses. On Axis I, he was diagnosed with schizophrenia, and on Axis II, he was diagnosed with a personality disorder, not otherwise specified.

A petition for the involuntary administration of psychotropic medication pursuant to section 2-107.1 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/2-107.1 (West 2006)) was filed on August 23, 2007. The petition was prepared by Dr. Kanwal Mahmood, a staff psychiatrist at the Alton Mental Health Center. In her petition, Dr. Mahmood asked to be allowed to administer Risperdal at a daily dosage range from 1 to 16 milligrams, Risperdal Consta at a dosage range from 1 to 50 milligrams every two weeks, and Ativan at a daily dosage from 1 to 10 milligrams. Alternatively, Dr. Mahmood sought authorization to utilize Haldol at a daily dosage of 1 to 100 milligrams, Haldol Decanoate at a dosage range from 1 to 300 milligrams every four weeks, and Klonopin at a daily dosage range from 1 to 20 milligrams.

The petition also sought authorization of the court to require David S. to undergo

2

certain tests and procedures related to the administration of these medications. The tests listed in the petition were "CBC, Chem 18, and EKG."

The hearing was held on September 11, 2007. Dr. Mahmood and David S. testified at this hearing.

Dr. Mahmood asked the court to authorize the administration of Risperdal at a daily dosage range of 1 to 16 milligrams and Risperdal Consta. She also sought the right to administer Ativan at a daily dosage range from 1 to 20 milligrams. As alternatives, Dr. Mahmood asked the court to allow her petition for the administration of Haldol at a dosage range from 1 to 100 milligrams and Haldol Decanoate. She also requested approval to administer Klonopin at the daily dosage range from 1 to 20 milligrams. No specifics regarding dosage or frequency were provided relative to the two injectable drugs–Risperdal Consta and Haldol Decanoate. Dr. Mahmood testified that the Risperdal and Haldol were antipsychotic medications and had the intended benefit of helping to minimize false fixed ideations as auditory hallucinations to allow David S. to have more logical and coherent thinking. Ativan and Klonopin were proposed because both could reduce anxiety. Dr. Mahmood provided testimony on possible side effects with all of these medications. Dr. Mahmood testified that based upon a reasonable degree of medical and psychiatric certainty, the intended benefits of each of these medications outweighed the possible risks and dangers.

Dr. Mahmood further testified in response to the State's question about tests and procedures for which she was seeking court approval, "We are requesting for CBC and EKG chemistry 18 [*sic*]." Dr. Mahmood provided no testimony regarding the reasons for the requested tests and no testimony regarding the reasonableness and necessity of the tests as related to the safe and proper administration of the medication. The record contained no other information relative to the reasons that the tests were necessary.

David S. testified that he simply did not believe that he was a candidate for the

3

administration of these types of drugs and that he was concerned about side effects.

Each side presented a closing argument, after which the trial court entered an order for the involuntary administration of psychotropic medications. The order, dated September 11, 2007, authorized the following drugs for a period not to exceed 90 days:

Risperdal to a maximum of 16 milligrams per day.

Risperdal Consta to a maximum of 50 milligrams every two weeks.

Ativan to a maximum of 10 milligrams every day.

For the alternatives, the court authorized the following:

Haldol to a maximum of 100 milligrams per day.

Haldol Decanoate to a maximum of 300 milligrams every four weeks.

Klonopin to a maximum of 20 milligrams per day.

The court also authorized all three tests requested by the State, indicating that the tests were "essential for the safe and effective administration of the Psychotropic Medication(s)."

On October 1, 2007, the trial court denied David S.'s motion to reconsider. David S. was discharged from the Alton Mental Health Center on October 30, 2007. He filed his notice of appeal on October 31, 2007.

On appeal, he contends that the judgment must be reversed because the State failed to establish by clear and convincing evidence that the proposed testing was essential for the safe and effective administration of the proposed treatment and further that the court's order failed to comply with the Mental Health and Developmental Disabilities Code because the order provided authorization for medication and dosages not supported by evidence and because neither the order nor the record contained the required findings of fact.

Initially, we note that the case is technically moot because the 90 days during which the order was in effect have elapsed and because David S. is no longer under the care of the State. Generally, courts should not address moot issues. *In re Mary Ann P.*, 202 Ill. 2d 393,

4

401, 781 N.E.2d 237, 242 (2002).  We cannot therefore render David S. any relief.  On appeal, courts can review certain moot issues that qualify under a public-interest exception. *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 242.  The three criteria for applying this exception are as follows: "(1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur." *In re Mary Ann P.*, 202 Ill. 2d at 402, 781 N.E.2d at 242-43 (citing *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365, 710 N.E.2d 1226, 1227 (1999), and *Radazewski v. Cawley*, 159 Ill. 2d 372, 376, 639 N.E.2d 141, 142 (1994)).

We conclude that this case meets all three criteria.  Compliance with statutory guidelines relative to requests for and the approval of the involuntary administration of psychotropic medication is not merely a goal; the guidelines are in place in order to provide the respondent with due process.  If the court determines that the involuntary administration of psychotropic medication is warranted, the court should do so because having complied with the requirements, involuntarily medicating a respondent is deemed proper under the unique circumstances of the case.  Since these types of orders are only valid for 90 days, this issue would almost always evade review, and so reviewing the issue, even though it is moot, would be beneficial to the court system. *In re John R.*, 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

For these reasons, we turn to the issues raised.

Psychotropic medications cannot be administered to an adult patient on an involuntary basis unless the State has established by clear and convincing evidence that each of the following factors is present:

      1. The recipient has a serious mental illness.

      2. The mental illness is causing a deterioration of the recipient's ability to function or is resulting in suffering or threatening or disruptive behavior.

5

3. The symptoms have been present for a period on a continuing basis.

4. The benefits of psychtropic medication outweigh any harm.

5. The recipient lacks the capacity to make a reasoned decision about the medication.

6. Other less restrictive services have been been explored and found to be inappropriate. 405 ILCS 5/2-107.1(a-5)(4) (West 2006).

Clear and convincing proof is defined as "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re John R.*, 339 Ill. App. 3d at 781, 792 N.E.2d at 353 (citing *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995)). To meet this clear-and-convincing-proof standard, the State must present expert testimony. 405 ILCS 5/3-807 (West 2006); 405 ILCS 5/2-107.1(a-5)(3) (West 2006). An order unsupported by expert testimony shall be reversed. *In re Louis S.*, 361 Ill. App. 3d 774, 781-82, 838 N.E.2d 226, 233 (2005). Expert opinions alone are insufficient. The opinions must be supported with specific facts establishing the bases for those opinions. *In re Alaka W.*, 379 Ill. App. 3d 251, 263, 884 N.E.2d 241, 250-51 (2008).

On appeal from an order allowing the involuntary administration of psychotropic drugs, we will not reverse the trial court's order unless we find that the order is contrary to the manifest weight of the evidence. *In re John R.*, 339 Ill. App. 3d at 781, 792 N.E.2d at 353 (citing *In re Jakush*, 311 Ill. App. 3d 940, 944, 725 N.E.2d 785, 789 (2000)).

Having reviewed the hearing in this matter, we find that there was very little evidence in support of the petition. One problem with the court's order is that the order relative to dosage does not match the testimony provided by Dr. Mahmood at the hearing. Dr. Mahmood testified that she was seeking an order for Ativan to be authorized in a daily dosage of anywhere between 1 and 20 milligrams. The petition sought up to a maximum dosage of 10 milligrams per day. The trial court's order was for the 10 milligrams per day,

6

and the order contained no rationale for a deviation from that requested by the treating psychiatrist, Dr. Mahmood. It would seem that rather than referring to the testimony when drafting the order, the trial court took the description of the dosages from the petition filed by the State. In that sense, the hearing was *pro forma*, with the trial court disregarding Dr. Mahmood's testimony. There is limited testimony provided about the injectable drugs alternatively requested. Dr. Mahmood refers to an injectable Haldol as being an alternative to oral Haldol, but she provides no evidence relative to the dosage or the timing of the dosage sought. Similar testimony was provided about the injectable form of Risperdal. Additionally, while the trial court's order indicates that the tests ordered are related to the safe and effective administration of the medications ordered, there was no testimony in this regard. The statutory language mandates "that such testing and procedures are essential for the safe and effective administration of the treatment." 405 ILCS 5/2-107.1(a-5)(4)(G) (West 2006). The State only asked Dr. Mahmood for the names of the tests about which she was seeking a court order in conjunction with these medications. No additional testimony was provided regarding the reasons for the tests and why the tests were deemed "essential." Even if the petition alone were to suffice on this point, the petition does not explain the nature of the tests requested or the reasons for their need. Allegations contained within a petition do not constitute evidence. 735 ILCS 5/2-605(a) (West 2006).

Individuals with mental illness maintain a constitutionally protected liberty interest that permits the refusal of the administration of psychotropic medications. *In re C.E.*, 161 Ill. 2d 200, 214, 641 N.E.2d 345, 351 (1994). "Any legislation that infringes upon these liberty interests must bear an important and substantial relationship to the State's interest as *parens patriae* in providing for mentally ill people who present a danger to themselves or others or who lack the capacity to make informed decisions concerning psychotropic medications." *In re Williams*, 305 Ill. App. 3d 506, 509, 712 N.E.2d 350, 352 (1999) (citing

7

*In re James*, 191 Ill. App. 3d 352, 547 N.E.2d 759 (1989)). The procedural process that must be followed before the court orders an involuntary administration of psychotropic medications reflects the legislature's concerns about those directives. *In re Miller*, 301 Ill. App. 3d 1060, 1072, 705 N.E.2d 144, 152 (1998). Of concern is the "substantially invasive nature of psychotropic substances and their significant side effects." *In re C.E.*, 161 Ill. 2d at 214, 641 N.E.2d at 351. Described as "mood altering," psychotropic drugs "may be misused by medical personnel[] and subverted to the objectives of patient control rather than patient treatment." *In re C.E.*, 161 Ill. 2d at 214, 215, 641 N.E.2d at 352. Given the fairly invasive nature of psychotropic medication, including the possibility of significant side effects caused thereby, we must be cautious in the entry of orders allowing hospital staff to involuntarily administer these drugs to persons suffering from mental illness. Because there was a lack of continuity between the petition and the court testimony relative to the drugs and dosages requested, as well as a lack of any explanation about the testing sought to be ordered, we conclude that the order in this case is contrary to the manifest weight of the evidence and must be reversed. Given the important liberty interests involved, we require firm proof of the elements required for the entry of this type of order.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed.


Reversed.


STEWART, P.J., and WEXSTTEN, J., concur.

NO. 5-07-0616

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* DAVID S., a Person Asserted to Be Subject to Involuntary Administration of Psychotropic Medication | ) ) ) | Appeal from the Circuit Court of Madison County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07-MH-157 |
| | ) | |
| David S., | ) ) | Honorable Nelson Metz, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

**Opinion Filed**: November 18, 2008

_____

**Justices**:  Honorable Melissa A. Chapman, J.,

Honorable Bruce D. Stewart, P.J.,
Honorable James M. Wexstten, J.,
Concur

_____

**Attorneys for Appellant**  Barbara A. Goeben, Staff Attorney, Veronique Baker, Director, Legal Advocacy Service, Guardianship and Advocacy Commission, Metro East Regional Office, 4500 College Avenue, Suite 100, Alton, Illinois, 62002

_____

**Attorneys for Appellee**  Hon. William A. Mudge, State's Attorney, Madison County Courthouse, 157 N. Main Street, Edwardsville, IL 62025; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, Sharon Shanahan, Contract Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Hwy. 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____